[Civ. No. 12532. First Dist., Div. One. Feb. 7, 1944.]

JOHN A. MADURO, Appellant, v. MARIA MADURO, Respondent.

W. L. A. Calder for Appellant.

No appearance for Respondent.

PETERS, P. J.—Plaintiff brought this action for the annulment of his marriage on the ground that at the time he

married the defendant she had another husband living from whom she had not been legally divorced. The defendant wife's default was duly and properly entered. A hearing was then had. The trial court denied the annulment on the ground that plaintiff had not introduced sufficient evidence at the hearing to prove the allegations of his complaint. Plaintiff appeals, the main point urged being that upon default of his wife, the allegations of the complaint being sufficient, he was, as a matter of law, entitled to a decree that the marriage was null and void from the beginning without the production of any evidence at all.

Strangely enough, there appears to be no California case discussing the question as to whether, when a defendant defaults in an annulment proceeding (using the term "annulment" in its broadest sense), such party is entitled to a judgment without the production of evidence. So far as divorces are concerned, the matter is expressly covered by statute. Section 130 of the Civil Code provides that: "No divorce can be granted upon the default of the defendant, or upon the uncorroborated statement, admission, or testimony of the parties. . . ." There is no comparable statute in reference to annulment. ■ Plaintiff correctly contends that the word "divorce" in section 130, *supra*, does not include annulments. In *Millar* v. *Millar*, 175 Cal. 797 [167 P. 394, Am.Cas. 1918E 184, L.R.A. 1918B 415], it was held that the word "divorce" appearing in section 128 of the Civil Code relating to the requisite residence of a plaintiff in a divorce proceeding, and the same term appearing in section 131 of the Civil Code requiring a decision to be filed in a divorce case, and the same term appearing in section 132 of that code providing for the entry of the final judgment in a divorce action after one year, has no application to annulment proceedings. For the reasons set forth in that opinion (see particularly 175 Cal. at pp. 806 to 809) we agree that section 130 has no application to annulment proceedings.

There appears to be no direct statutory provision on the subject. Section 585 of the Code of Civil Procedure, upon which plaintiff relies, provides for the entry of defaults in certain cases without the taking of evidence, and requires or permits the taking of evidence in certain other cases, but there is no direct reference to annulment proceedings in that section. ■ Subdivision 3 of section 166 of the Code of Civil

Procedure provides that a judge may hear and determine in chambers "all uncontested actions, . . . and other matters pending before the court other than actions for divorce, maintenance or annulment of marriage. . . ." Thus, under this section, a judge is without power to hear an uncontested annulment action in chambers. The implication is that the judge must "hear" such uncontested action in open court, which necessarily implies that evidence shall be taken.

However, without regard to any statutory provision, we are convinced that, as a matter of public policy, and in order to protect the interests of the state in the marriage relationship, a trial court not only has the discretion to require the production of evidence in a default annulment, but that, in such a case, such court is without power to enter judgment without the production of evidence. Cases dealing with the dissolution or annulment of the marriage relationship are *sui generis*. The state is a silent but by no means inactive third party to every action to dissolve a marriage. The institution of marriage is of so much importance to society that the public is interested in the outcome of every action for an annulment. (*Wadsworth* v. *Wadsworth*, 81 Cal. 182 [22 P. 648, 15 Am.St.Rep. 38]; 16 Cal.Jur. p. 943, sec. 36.) It is well settled that: "In view of the peculiar nature of marriage and the grave consequences attendant upon its subversion, the courts will not grant a decree of nullity except upon the production of clear, satisfactory and convincing evidence." (38 C.J. p. 1354, sec. 131; see footnote 29 where many cases are cited.)

While the state has no interest in preventing an annulment where the grounds necessary therefor exist, it is interested in seeing to it that no marriage is declared void as a result of fraud or collusion, and that the statutory grounds upon which the annulment is sought actually do exist. If annulments could be granted without production of evidence it would rest entirely within the power of the two parties to the marriage contract to secure an annulment upon the filing of a verified complaint and upon default of the defendant. The interests of the state in maintaining the marriage contract would in no way be protected.

We are not without persuasive authority from other jurisdictions on this subject. It is well settled that even though there is no statute requiring the production of evidence in default divorce cases, the interest of the state re-

quires that no judgment be entered without the production of such evidence. Bishop in his book on "Marriage, Divorce and Separation" at p. 284, section 692, states the rule as follows: "A default in a divorce suit, or taking the bill *pro confesso* when the proceeding is in equity, does not, as in other causes, authorize a judgment without proofs, or in any degree supersede the necessity of proofs, or lighten the burden of the plaintiff in establishing his allegations." As Bishop points out, this doctrine is in accord with the ancient common law (*Ibid.*, p. 290, sec. 708) and with the canon law (*Ibid.*, p. 290, sec. 709). He also points out that any admission by the defendant in an annulment proceeding should be received with "particular caution" in order to be sure that parties, by collusion, are not thus seeking to annul a marriage in fact valid. (*Ibid.*, p. 293, sec. 717.)

There are several cases from other states holding that, in divorce cases, as a matter of public policy, and in the absence of statute, the trial court is without power to enter a decree without the production of evidence. (*Robinson* v. *Robinson* (N.Y.) 1 Barb. 27; *Scott* v. *Scott*, 17 Ind. 309; *Palmer* v. *Palmer* (N.Y.) 1 Page Ch. 276; *Welch* v. *Welch*, 16 Ark. 527; *Fogel* v. *McDonald*, 159 S.C. 506 [157 S.E.830] ; *Hawes* v. *Hawes*, 33 Ill. 286.)

From what has been said, it is clear that in order to preserve the interests of the state in the marriage relationship, and in order that no marriage shall be dissolved, either by divorce or annulment, unless the grounds therefor exist, a trial court is without power to grant an annulment without the production of evidence to support the allegations of the complaint. The trial court did not err, therefore, in requiring the production of evidence in the present case.

Plaintiff also urges that the evidence produced by him, as a matter of law, was legally sufficient to require the trial court to enter the decree. The plaintiff testified that his wife had told him in his attorney's presence that she had another and prior husband living, and that the only divorce she had obtained from him was a Mexican correspondence divorce. The trial court termed this testimony the "clearest sort of hearsay," and when plaintiff failed to produce any other evidence, denied the annulment. While such declarations were admissible as admissions against interest, the trial court was entitled to look upon such admissions with

suspicion. Such out of court admissions are not entitled to much more weight than the admission involved in failing to answer the complaint. It was for the trial court to pass upon the credibility of the witnesses and the weight to be given their testimony. Certainly such evidence was not so ''clear, satisfactory and convincing,'' that the trial court abused its powers in refusing to base a decree thereon.

The judgment appealed from is affirmed.

Ward, J., and Dooling, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 6, 1944. Carter, J., voted for a hearing.